1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL SWANBOM, et al., | Case No.  1:24 -cv-00171-KES-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT TRAVELERS COMMERCIAL INSURANCE COMPANY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM WITH LEAVE TO AMEND |
| v. | |
| TRAVELERS COMMERCIAL INSURANCE COMPANY, | |
| Defendant. | (ECF Nos. 11, 14, 15) |
| | **OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS** |

Currently before the Court is Travelers Commercial Insurance Company's ("hereafter Defendant") motion to dismiss Joel Swanbom and Katie Swanbom's (hereafter "Plaintiffs") complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  (ECF No. 12.)

The Court heard oral argument on May 22, 2024.  (ECF No. 16.)  Counsel Christian Garris appeared by video for Plaintiffs, and counsel Kathleen Delaney appeared by video for Defendant. (Id.)  Based on the moving, opposition, and reply papers, the information presented by counsel at the hearing held on May 22, 2024, and the Court's record, the Court recommends Defendant's motion to dismiss be denied.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs purchased a homeowner's policy from Defendant from around April 27, 2010, through March 15, 2018, on property they owned located at 7158 North Maine Avenue, Clovis, California ("the Maine policy").  (Compl. ¶ 1, ECF No. 1.)  Around January 27, 2018, Plaintiffs sold the Maine property to The Servants and Handmaids of the Sacred Heart of Jesus, Mary and Joseph (hereafter "the Buyer").  Escrow closed on or about February 16, 2018.  (Compl. ¶ 10.)  Thereafter, Plaintiffs purchased property at 5421 East Butler Avenue, Fresno, California, and from February 22, 2018, Plaintiffs purchased a homeowner's policy from Defendant on that property ("the Butler policy").  (Compl. ¶¶ 1, 11.)

After the purchase, the Buyer notified Plaintiffs of damages they had suffered at the Maine property.  Plaintiffs promptly tendered the claim to Defendant.  (Compl. ¶ 14.)  Around October 23, 2018, Defendant acknowledged receipt of the tendered claim.  (Compl. ¶ 15.)  On or about July 16, 2020, the Buyer filed a complaint against Plaintiffs in Fresno County Superior Court, case no. 20CECG02061 ("the underlying action") alleging negligence and five additional causes of action. The Buyer alleged in part that they suffered ongoing physical harm to the Maine property including damage and loss of use during the Maine policy and Butler policy periods of coverage. (Compl. ¶ 16.)

About July 31, 2020, Defendant notified Plaintiffs that it was continuing to investigate the claim.  (Compl. ¶ 17.)  On August 28, 2020, the Buyer filed an amended complaint alleging that they paid $1.275 million for the Maine property and there were no disclosures from Plaintiffs regarding any draining or flood issues on the property, Plaintiffs had failed to disclose that a well on the property did not produce adequate amounts of water, physical damage to the property had occurred, and the Buyer had suffered a loss of use of a portion of the property.  (Compl. ¶ 18.)  The Buyer alleged that Plaintiffs had failed to properly maintain the Maine property and the failure to maintain the property led to destruction of the pool filter and resulting damage on May 5, 2018. (Compl. ¶ 19.)

Around September 2, 2020, Defendant denied Plaintiffs' claim, refusing to defend or

1  indemnify Plaintiffs in the underlying action.  (Compl. ¶ 20.)  On or about May 25, 2021,

2  Plaintiffs' retained counsel updated Defendant regarding the claim and requested reconsideration

3  of the denial.  (Compl. ¶ 21.)  About June 15, 2021, Defendant denied the claim for

4  reconsideration.  (Compl. ¶ 22.)

5      Around May 2, 2023, the state court action was resolved when Plaintiffs settled the

6  underlying action for $45,000 and the case was dismissed with prejudice on June 7, 2023.  (Compl.

7  ¶ 23.)  Around July 5, 2023, Defendant notified Plaintiffs that it would not reimburse Plaintiffs for

8  their defense costs or the money spent to settle the action.  (Compl. ¶ 24.)  Plaintiffs spent in

9  excess of $271,380. in attorney fees and costs in defending the underlying action.  (Compl. ¶ 25.)

10      Plaintiffs filed this action against Defendant on February 24, 2024, alleging breach of

11  contract and breach of the covenant of good faith and fair dealing.[1]  On April 3, 2023, Defendant

12  filed a motion to dismiss for failure to state a claim.  (ECF No. 11.)  On April 17, 2024, Plaintiffs

13  filed an opposition to the motion to dismiss.  (ECF No. 14.)  On April 29, 2024, Defendants filed a

14  reply.  (ECF No. 15.)

**II.**

**LEGAL STANDARDS**

**A.      Motion to Dismiss**

      Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may file a motion to

---

[1] Although not specifically addressed in the complaint, district courts have original jurisdiction of all civil actions between citizens of different States in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).  **Error! Main Document Only.**This requires complete diversity of citizenship and the presence "of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action."  Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted).  The complaint alleges that Plaintiffs reside in the states of Louisiana and Defendant is domiciled in the State of Connecticut where it is authorized and licensed to conduct business.  (Compl. ¶¶ 5, 6.)  "[T]he diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency."  Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."  Kanter, 265 F.3d at 857.  Further, a corporation is deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.  Lincoln Prop. Co. v. Roche, 546 U.S. 81, 94 (2005) (quoting 28 U.S.C. § 1332(c)(1)).  .Defendant has not challenged the diversity requirement in this action.

      Based on the allegations in the complaint, Defendant would be a citizen of Connecticut where it is incorporated and authorized to conduct business.  Although Plaintiffs state they are residents of Louisiana, they previously were domiciled in California.  Whether citizens of California or Louisiana, since Defendant is a citizen of Connecticut, the parties are not citizens of the same state.  The amount in controversy is met as the complaint is seeking in excess of $300,000. in damages (the amount of the underlying settlement and attorney fees to defend the action).  The Court finds that diversity jurisdiction exists in this action.

dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The pleading standard under Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. In ruling on a motion to dismiss the court considers the allegations in the complaint, any attached exhibits, and matters properly subject to judicial notice pursuant to Federal Rule of Evidence 201. Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012); Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988); Granite Outlet, Inc. v. Hartford Cas. Ins. Co., 190 F. Supp. 3d 976, 981 (E.D. Cal. 2016).

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply. First, to be entitled to the presumption of truth, the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Id. "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988)).

///

4

**B.  Relevant Insurance Law Principals**

In this diversity action, the court must apply California law when interpreting the insurance policies.  Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).  Under California law, "interpretation of an insurance policy is a question of law that follows the general rules of contract interpretation."  TRB Invs., Inc. v. Fireman's Fund Ins. Co., 40 Cal.4th 19, 27 (2006); Palmer v. Truck Ins. Exch., 21 Cal.4th 1109, 1115 (1999); Dua v. Stillwater Ins. Co., 91 Cal.App.5th 127, 135–36 (2023), review denied (July 12, 2023).  "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply."  Bank of the West v. Superior Ct., 2 Cal. 4th 1254, 1264 (1992).  The fundamental rules of contract interpretation are based on the premise that giving effect to the mutual intention of the parties at the time the contract was formed guides the interpretation of a contract.  TRB Invs., Inc., 40 Cal.4th at 27 (citing Cal. Civ. Code § 1636); Bank of the West, 2 Cal. 4th at 1264.

The California Civil Code provides that interpretation of the contract is to be governed by the language of the contract.  Cal. Civ. Code § 1638.  If possible, the intent of the parties is to be inferred solely from the written provisions of the contract. Id., § 1639.  Judicial interpretation is controlled by the "clear and explicit" meaning of the provisions, id., § 1638, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage," id., § 1644.

The terms of the policy must be interpreted in context, giving effect "to every part" of the policy with "each clause helping to interpret the other," with regard to the intended function of the policy.  Bank of the West, 2 Cal. 4th at 1264; Palmer, 21 Cal.4th at 1115.  Further, insurance coverage is "interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] ... exclusionary clauses are interpreted narrowly against the insurer."  TRB Invs., Inc., 40 Cal.4th at 27 (quoting MacKinnon v. Truck Ins. Exchange, 31 Cal.4th 635, 647–648 (2003)).  To ensure that the end result (coverage or noncoverage) conforms with the insured's objectively reasonable expectations, a broad construction is used to aid the insured in meeting his burden of proof.  TRB Invs., Inc., 40 Cal.4th at 27-28 (citing Aydin Corp. v. First State Ins. Co. 18 Cal.4th

1   1183, 1192 (1998)); <u>Bank of the West</u>, 2 Cal. 4th at 1265.

2   "A policy provision will be considered ambiguous when it is capable of two or more

3   constructions, both of which are reasonable.  But language in a contract must be interpreted as a

4   whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract."

5   <u>TRB Invs., Inc.</u>, 40 Cal.4th at 27 (quoting <u>MacKinnon</u>, 31 Cal.4th at 647–648).  If found to be

6   ambiguous, the court then may invoke "the principle that ambiguities are generally construed

7   against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the

8   insured's reasonable expectation of coverage."  <u>Palmer</u>, 21 Cal.4th at 1115 (quoting <u>La Jolla Beach</u>

9   <u>& Tennis Club, Inc. v. Industrial Indemnity Co.</u>, 9 Cal.4th 27, 37 (1994)).

10  **III.**

11  **DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**

12  In conjunction with the motion to dismiss, Defendant has filed a request for judicial notice.

13  (ECF No. 11-1.)  Defendant seeks for the Court to take judicial notice of the first amended

14  complaint filed in the Fresno County Superior Court in the underlying action.  (ECF No. 11-2.)

15  Plaintiff has not opposed the request for judicial notice.

16  As a general rule, a district court ordinarily considers only the complaint and documents

17  attached thereto in deciding a motion to dismiss.  However, the court may also take judicial notice

18  of matters of public record and consider them without converting a Rule 12(b) motion into one for

19  summary judgment.  Fed. R. Civ. P. 12(d); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688–89 (9th

20  Cir. 2001).  The court may "judicially notice a fact that is not subject to reasonable dispute because

21  it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

22  readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

23  201(b).

24  Courts may take judicial notice of undisputed matters of public record, including

25  documents on file in federal or state courts.  <u>Harris v. Cnty. of Orange</u>, 682 F.3d 1126, 1132 (9th

26  Cir. 2012); <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 n. 2 (9th Cir. 2006).

27  Here, the state court complaint is not subject to reasonable dispute and the Court grants

28  Defendant's request for judicial notice of the first amended complaint filed in the underlying

action.  "A court may take judicial notice of public filings when adjudicating a motion to dismiss a complaint for failure to state a claim upon which relief can be granted."  In re CNET Networks, Inc., 483 F.Supp.2d 947, 953 (N.D. Cal. 2007).

**IV.**

**DISCUSSION**

Defendant contends that the insurance policies issued provided for personal liability coverage to Plaintiffs for claims due to "bodily injury" or "property damage" caused by an "occurrence."  Defendant argues that under the terms and provisions of the policies, as well as pursuant to California law, none of the claims alleged by the Buyer against Plaintiffs in the underlying action are within the scope of coverage.  Defendant asserts that coverage in the underlying action was properly denied, Plaintiffs fail to state any valid claims, and request that the motion to dismiss be granted without leave to amend.  (Def.'s Mot. to Dismiss for Failure to State a Claim ("Mot.") 9,[2] ECF No. 11.)

Plaintiffs counter that since this is a motion to dismiss and not a motion for summary judgment the only issue before the Court is whether they have properly alleged a cause of action against Defendant.  Plaintiffs assert that in the context of the action here they merely need to allege there was a bare possibility of coverage for the lawsuit filed against them.  Plaintiffs argue that all they need to do to survive the motion to dismiss is allege that Defendant has acted unreasonably which they have done.  (Pls.' Opposition ("Opp") 6, ECF No. 14.)  Plaintiffs contend that the underlying lawsuit alleges negligence, and the policy promises to defend them from all claims of negligence by third parties.  (Opp. 10.)

**A.      Incorporation by Reference**

A court may consider material which is properly submitted as part of the complaint, documents incorporated by reference, or matters of judicial notice on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment.  United States v. Ritchie ("Ritchie"), 342 F.3d 903, 908 (9th Cir. 2003).  If the documents are not physically attached to the

---

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

complaint, they may be considered if the documents' "authenticity ... is not contested" and "the plaintiff's complaint necessarily relies" on them. Lee, 250 F.3d at 688 (quoting Parrino v. FHP, Inc., 146 F.3d 699, 705–06 (9th Cir.1998)). Where the document is not attached to the complaint, "it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." Ritchie, 342 F.3d at 908. The doctrine of incorporation by reference usually applies when a plaintiff's claim about insurance coverage is based on the contents of the coverage plan. Id.

Although not attached to the complaint, Plaintiffs' complaint refers to the insurance policies and the policies form the basis of Plaintiffs' complaint that Defendant has breached the insurance contract by failing to defend and indemnify them pursuant to the terms of the policy. (Compl. 2.) Accordingly, the doctrine of incorporation by reference applies and the Court shall consider the insurance policies in deciding Defendant's argument that the allegations in the underlying action do not give rise to coverage under the insurance policies and therefore there has been no breach by refusing to defend or indemnify Plaintiffs in the underlying action.

Under California law, "the insurer is not required to defend an action against the insured when the complaint in that action shows on its face that the injury complained of is not only not covered by, but is excluded from the policy[;]" or where "the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage*." Montrose Chem. Corp. v. Superior Ct., 6 Cal. 4th 287, 297, 300 (1993) (emphasis in original) (quoting Gray v. Zurich Insurance Co., 65 Cal.2d 263, 276 n.15. (1966)).

### B.    Relevant Terms of the Policies

Both insurance policies include an umbrella supplement which provides coverage for all automobiles and recreational vehicles owned, leased, or regularly furnished to the insured; and insures all premises owned, leased by or leased to others; and insures all watercraft owned, leased by or leased to the insured. (Homeowners Policy No. 986648009-633-1 ("Maine Policy") 8, ECF No. 11-4; Homeowners Policy No. 602094792-633-1 ("Butler Policy") 8, ECF No. 11-5.) The following applies to both policies.

///

**DEFINITIONS**

10. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period in

    a.  "bodily injury"; or

    b.  "property damage".

11. "Property Damage" means physical injury to, destruction of, or loss of use of tangible property.

…

13. "Residence premises" means:

    a.  The one family dwelling where you reside; or

    b.  The two, three or four family dwelling where you reside in at least one of the family units;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

(Maine Policy 18; Butler Policy 16.)

**SECTION II -LIABILITY COVERAGES**

**COVERAGE E - PERSONAL LIABILITY**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against "insured";

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" is exhausted by the payment of a judgment or settlement.

(Maine Policy 32; Butler Policy 16.)

The umbrella supplement also provides,

In return for payment of premiums when due, and subject to the SECTION I AND SECTION II CONDITIONS of this policy and the terms of this supplement, we will pay damages for which an "insured" becomes legally liable due to "bodily injury", "property damage", or "personal injury" caused by an "occurrence".

This coverage applies only to damages in excess of the "retained limit".

(Maine Policy 48; Butler Policy 48.)  As relevant here, an occurrence is defined under the umbrella policy as "[a]n accident, including continuous or repeated exposure to substantially the same general conditions, that results in "bodily injury" or "property damage" during the policy period." (Maine Policy 49; Butler Policy 49.)  "Property damage" means physical injury to, destruction of, or loss of use of, tangible property."  (Maine Policy 50; Butler Policy 50.)

### C. Underlying First Amended Complaint Allegations

In the underlying action, the Buyer alleged a claim for fraudulent inducement to enter contract.  (First Amended Complaint (hereafter "State Compl."), ECF No. 11-2.)  In support of the allegation, the Buyer alleged that Plaintiffs expressly represented in writing that there were no flood, drainage, or grading problems at the property.  (State Compl. ¶ 11(a).)  They also supplied a seller property questionnaire during escrow that represented that the ponding basin at the property was sufficient to handle any accumulating rainwater at the property.  (Id., ¶ 11(b).)  In the disclosure statement, Plaintiffs represented that the well on the property provided water supply without indicating that there were problems of sufficiency or contamination with the water supply. (Id., ¶¶ 11(c)(d).)  Plaintiffs represented in writing that permits were pending for the kitchen and guest house and, through their real estate agent, verbally represented that the required documentation for the completion and ability to use the kitchen and final inspection and approval of the guest house would be issued prior to the close of escrow.  (Id., ¶ 11(e).)  Plaintiffs represented that the swimming pool equipment was in good working condition and that the irrigation systems and drainage at the property were adequate.  (Id., ¶¶ 11(f)(g).)  The Buyer alleged that Plaintiffs knew that the true facts were that there were serious flooding, drainage, and grading problems at the property, such that during the rainy season the property was subject to serious flooding.  (Id., ¶ 12(a).)  The ponding basin was completely insufficient to handle accumulating rainwater, resulting in serious flooding.  (Id., ¶ 12(b).) There were serious deficiencies in the water supply such that there was no regular water supply in the main house and guest house, and the water supply at the property was unsafe due to excessive nitrate

contamination.  (Id., ¶ 12(c)(d).)  The required documentation for the kitchen could not be obtained until April 2020 and the documentation for the guesthouse was unable to be obtained through the date the complaint was filed resulting in the inability to lawfully use the kitchen and guesthouse. (Id., ¶ 12(e).)  The swimming pool equipment was not in good working condition in view of the defective and improperly maintained pump, filter, and heater system and Plaintiffs' negligent maintenance.  (Id. ¶ 12(f).)

The Buyer also alleged a claim for fraudulent concealment generally based on the same factual allegations as to the flooding, ponding basin, lack of and contaminated water supply, permitting of the kitchen and guesthouse, irrigation system and pool, and in addition that the Piranha modification to one of the septic tanks had faulty electrical installation and another septic system on the property had not been identified or inspected.  (Id., ¶ 18.)

Additionally, the Buyer brought claims for negligence based on the above allegations, breach of written contract for the sale of real property, violation of California Civil Code § 1102 et seq., and aiding and abetting.  (Id., pp. 10-14.)

### D.  Whether the Policies Provide Coverage for the Underlying Action

Defendant contends that the insurance policies both require "property damage" caused by an "occurrence" as defined within the policies and the claims in the underlying action are not within the scope of coverage.  (Mot. 9.)  Defendant argues that there is no possibility of coverage under either the Maine policy, the Butler policy, or the umbrella policy.  Defendant contends that under controlling law, an insured's failure to disclose defects, regardless of whether intentional or negligent, when selling his property does not constitute an "occurrence" under the liability coverage of a homeowner's policy.  (Mot. 10.)  Defendant argues that since the Buyer's claims arose out of and are dependent on the purchase of the Maine property and in reliance on Plaintiffs' alleged failure to disclose defects in the Maine property there is no occurrence under the insurance policies.  Defendant asserts that all the Buyer's claims in the underlying action were predicated on Plaintiffs failure to disclose the true condition of the property and these failures to disclose constitute fraud and are necessarily intentional and not accidental.  Defendant contends as a matter of law, the claims and allegations asserted in the underlying action do not relate to an

1  "occurrence." (Mot. 17.)

2      Further, Defendant asserts that California law is clear that since all of the Buyer's claims

3  against Plaintiffs in the underlying action arise out of the contract to sell the Maine property, the

4  insurance policies do not afford coverage for the claims. Defendant contends that controlling law

5  is clear that a claim sounds in contract and not tort when it is dependent on the existence of a

6  contract regardless of how the claim is characterized. Defendant argues that the purchase

7  agreement between Plaintiffs and the Buyer is the only instrument that created any obligation

8  between Plaintiffs and the Buyer. Therefore, any duties owed to the Buyer by Plaintiffs arise from

9  contract and are not within the scope of insurance coverage. (Mot. 19.)

10      Lastly, Defendant argues that the policy covers an occurrence that causes bodily injury or

11  property damage, and the damages here are not covered under the policy. Defendant asserts that

12  the underlying complaint alleges the damage as the difference between the value paid and the true

13  value of the property due to the lack of disclosures as to the true condition of the property.

14  Defendant asserts that, while loss of use may be an element of the underlying damages, monetary

15  loss is not property damage within the terms of the policy. (Mot. 20-1.)

16      Plaintiffs respond that Defendant cannot meet the high burden required on a motion to

17  dismiss and all Plaintiffs need to do is allege that Defendant acted unreasonably, and they have

18  done so. (Opp. 6.) Plaintiffs argue that a motion to dismiss only tests the adequacy of the

19  pleadings and the well pled allegations in the complaint must be accepted as true; therefore, this

20  action cannot be decided on a motion to dismiss. Plaintiffs state that the policy promises to defend

21  against any and all claims of negligence by third parties and the Buyers have filed just such an

22  action.[3] Plaintiffs contend that they have met the standard to survive a motion to dismiss on the

23  failure to defend because they have alleged enough to show a bare or mere possibility of coverage

24  for the duty to defend exists. (Opp. 10.)

25      Plaintiffs counter that there are several scenarios under which the possibility of coverage

26  exists. The underlying action alleges swimming pool equipment was improperly maintained by

27

28  [3] The Court has reviewed the page cited by Plaintiffs and finds no such language in the policy. Further a review of the policies does not reveal any promise by Defendant to defend against any and all claims of negligence.

1   Plaintiffs causing physical damage to the Buyer, and during discovery, there was an allegation that

2   Plaintiffs negligently made physical changes to the property that caused a flood after the Buyer

3   became the owner of the property, and there was a loss of use allegation.  (Opp. 12.)   Plaintiff

4   argues that there was an occurrence that caused property damage.  Although they may have

5   intentionally made alterations to the property, their alleged negligent modifications were unknown

6   to them and accidently caused damage to other physical property.  (Opp. 13-4.)

7       Plaintiff asserts that not all of the claims raised in the underlying action were related to

8   failures to disclose.  Some of the claims were for negligent failure to maintain equipment on the

9   property that resulted in physical damage to the property, including loss of use.  Plaintiffs argue

10  that the underlying complaint alleges negligence on behalf of Plaintiffs.  Plaintiffs contend that the

11  damage here is not economic damage, but actual physical damage to the property based on

12  Plaintiffs alleged negligent maintenance of the property.  Plaintiff asserts that it is not the failure to

13  disclose that is the basis of the underlying complaint, but the negligent failure to maintain the

14  property which resulted in property damage.  (Opp. 16.)

15      Plaintiffs argue that while there are allegations of breach of contract in the underlying

16  complaint, there are also allegations of negligent alteration and maintenance of the physical

17  property and equipment that resulted in physical damage to the property and the Buyer has alleged

18  claims of negligence.  (Opp. 17.)  Plaintiff further argues that the California Supreme Court has

19  overruled a large number of cases that held that an action based on breach of contract could never

20  be covered under an insurance policy holding the policy language should be reviewed and the

21  damage allegations should be the focus of any coverage analysis.  (Opp. 18.)  Plaintiff asserts that

22  while Defendant argues that the duty owed to the Buyer was exclusively established by the real

23  estate contract, the policy does not exclude coverage arising out of a contract to sell property.

24  (Opp. 19-20.)

25      Plaintiff argues that the underlying action alleges property damage and loss of use, and the

26  cases Defendant relies on are distinguishable because here the underlying action is not exclusively

27  a claim for fraudulent failure to disclose that alleges diminution in value.  (Opp. 21.)  Finally,

28  Plaintiffs argue that since they have alleged a claim for breach of contract their bad faith claim has

1   also been adequately pled.  (Opp. 22-3.)

2   Defendant replies that Plaintiffs concede that none of the underlying claims for

3   misrepresentation and failure to disclose are covered under the policy and focus on the underlying

4   claim that they negligently maintained the property.  Defendant argues that Plaintiffs miss the

5   point of the current motion which is that the relationship between the Buyer and Plaintiffs arises

6   out of a contract for the sale of the property.  Before the parties entered into the contract, Plaintiffs

7   owed no duty to anyone regarding the maintenance and repairs as they owned the property

8   themselves.  (Reply 2.)  Therefore, Buyer did not have and could not have had a claim against

9   Plaintiffs for the alleged negligent repairs and maintenance of the property.   (Reply 2-3.)

10   Defendant contends that any duty Plaintiffs owed to Buyer was created by the contract for sale of

11   the property.  The duty imposed by that contract was to disclose defects regarding the property as

12   required by California Civil Code, section 1102, et seq.  Under California law, duties dependent on

13   the existence of a contract are not covered by insurance.  (Reply 3.)

14   Defendant contends that adding a negligence label to the underlying complaint does not

15   change the analysis.  (Reply 4.)  Further, Defendant argues that the lack of an exclusion that

16   precludes coverage is a red herring because before there can be any analysis of exclusions,

17   Plaintiff must show that their claims fall within the insuring provisions.  (Reply 4-5.)  Defendant

18   asserts that since there was no occurrence under the terms of the policy the claims should be

19   dismissed without leave to amend.  Finally, Defendant argues that since Plaintiff has failed to

20   allege a viable breach of contract claim, there can be no bad faith claim as there is no possibility of

21   coverage.  (Reply 5.)

22       1.   Legal Standard

23   Plaintiffs contend that Defendant has breached the contract by failing to defend and

24   indemnify in the underlying action.  To state a claim for breach of contract under California law,

25   plaintiff must allege (1) the existence of a contract; (2) plaintiff's performance; (3) defendant's

26   breach of the contract; and (4) damages flowing from the breach."  A.B. Concrete Coating Inc. v.

27   Wells Fargo Bank, Nat'l Ass'n, 491 F.Supp.3d 727, 735 (E.D. Cal. 2020) (citing CDF Firefighters

28   v. Maldonado, 158 Cal.App.4th 1226, 1239 (2008)).  In a breach of contract claim, "the

1  determination whether the insurer owes a duty to defend usually is made in the first instance by

2  comparing the allegations of the complaint with the terms of the policy." Granite Outlet, Inc., 190

3  F.Supp.3d at 987 (quoting Waller v. Truck Ins. Exch., Inc., 11 Cal.4th 1, 19 (1995) and UMG

4  Recordings, Inc. v. American Home Assur. Co., 321 Fed.Appx. 553, 554 (9th Cir.2008));

5  Montrose Chem. Corp., 6 Cal.4th at 295.

6       "An insurance company's duty to defend arises from the contractual provisions contained

7  in its policy." Frank & Freedus v. Allstate Ins. Co., 45 Cal.App.4th 461, 469 (1996).  The duty to

8  defend is broader than an insurer's duty to indemnify.  Granite Outlet, Inc., 190 F.Supp.3d at 987

9  (citing Certain Underwriters at Lloyd's of London v. Superior Court, 24 Cal.4th 945, 958 (2001);

10 Montrose Chem. Corp., 6 Cal.4th at 295.  The insurer's duty to defend arises where an insured

11 "becomes aware of, or if a third party lawsuit pleads, facts that give rise to potential liability under

12 the insurance policy."  Frank & Freedus, 45 Cal.App.4th at 469; Mirpad, LLC v. California Ins.

13 Guarantee Assn., 132 Cal.App.4th 1058, 1068 (2005).  "Any doubt as to whether the facts give rise

14 to a duty to defend is resolved in the insured's favor."  Storek v. Fid. & Guar. Ins. Underwriters,

15 Inc., 504 F.Supp.2d 803, 807 (N.D. Cal. 2007), aff'd, 320 F. App'x 508 (9th Cir. 2009) (quoting

16 Horace Mann Ins. Co. v. Barbara B., 4 Cal.4th 1076, 1081 (1993)).

17      "Where there is no duty to defend, there cannot be a duty to indemnify."  Granite Outlet,

18 Inc., 190 F.Supp.3d at 987.  Although "an insurer has a duty to defend suits which potentially seek

19 covered damages, it has a duty to indemnify only where a judgment has been entered on a theory

20 which is actually (not potentially) covered by the policy."  Palmer, 21 Cal.4th at 1120 (quoting

21 Collin v. American Empire Ins. Co., 21 Cal.App.4th 787, 803(1994)); see also State Farm Fire &

22 Cas. Co. v. Superior Ct., 191 Cal.App.3d 74, 77 (1987) ("where there is no possibility of coverage,

23 there is no duty to defend").

24      2.    Analysis

25      The Court first considers Defendant's argument that there was no "occurrence" resulting in

26 "property" damage under the policies.  Defendant asserts that all of the Buyers claims in the

27 underlying action were predicated on the failure to disclose the true condition of the property and

28 this was intentional, not accidental, and as a matter of law the claims do not relate to an

occurrence. The parties agree that the claim for fraudulent failure to disclose or negligent misrepresentation which led to a diminution in value are not a covered claim because it would not be a claim for an occurrence that caused property damage. (See Mot. 16-7; Opp. 21.) The issue therefore is whether the allegations of negligence and negligence claim within the underlying complaint are an "occurrence" that caused "property damage" under the policy.

Plaintiffs contend that the underlying action alleged that they were negligent by improperly maintaining equipment and the property which resulted in physical damage to the property and loss of use. "An insurer can be excused from the duty to defend only if the third party complaint can by no conceivable theory raise an issue within the policy's coverage." Dua, 91 Cal.App.5th at 131. If there exists a single issue which is even potentially within the policy's coverage, the insurer has a duty to defend the insured against the third-party action in its entirety. Hendrickson v. Zurich Am. Ins. Co. of Illinois, 72 Cal.App.4th 1084, 1089 (1999).

The parties dispute whether there was an occurrence under the policy. As relevant here, the policies require an "occurrence" which means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period in "property damage". (Maine Policy 18; Butler Policy 16.) In their reply, Plaintiffs argue an occurrence under the policy is present, because while they may have intentionally made modifications or maintained the property, the allegedly negligent modifications or maintenance were unknown to them and accidently caused damage to the property. (Opp. 13-4.) In response, Defendant argues that there is no occurrence based on these allegations because the duty owed by Plaintiffs to the buyer arose out of the contract for sale of the property and is not covered under the insurance policy. (Reply 2-3.)

**a.    Whether allegations of negligence are "occurrences" within the policy**

The Court first considers Plaintiff's argument that the negligence claim and allegations are an "occurrence" within the policy. Defendant cites cases holding that an intentional act is not an accident under the terms of an insurance policy.

While it is commonly argued that if the underlying complaint alleges negligence there must be a duty to defend, that is not necessarily true. Quan v. Truck Ins. Exch., 67 Cal.App.4th 583,

595 (1998).  The duty to defend depends upon the nature and kind of risk covered which depends upon the wording of the coverage clauses.  Quan, 67 Cal.App.4th 595.  Here, the coverage requires an "occurrence" that causes "property damage" which is defined to require an accident.  "An accident which is the source and cause of a property damage in an insurance policy "is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause."  Delgado v. Interinsurance Exch. of Auto. Club of S. California, 47 Cal.4th 302, 309 (2009) (quoting Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co., 51 Cal.2d 558, 564 (1959)).  "An intentional act is not an "accident" within the plain meaning of the word."  Royal Globe Ins. Co. v. Whitaker, 181 Cal.App.3d 532, 537 (1986).  An accident can only flow from an intentional act if "some additional, unexpected, independent, and unforeseen happening occurs that produces the damage."  Delgado, 47 Cal.4th at 315 (quoting Merced Mutual Ins. Co. v. Mendez, 213 Cal.App.3d 41, 50 (1989)); Quan, 67 Cal.App.4th at 600.

   In these cases finding deliberate or intentional conduct not to be an accident under the policy language courts are addressing knowingly inflicting harm.  See Quan, 67 Cal.App.4th at 600-011 ("there is no theory available on the facts expressed in the complaint or made known to the insurer from other sources under which the insured can be liable for physical injuries caused by 'accidentally' touching, kissing, embracing or having sex with the claimant, nor is there any additional 'happening' to combine with these necessarily deliberate acts so as to produce an 'accident' giving rise to bodily injury"); Delgado, 47 Cal.4th at 317 ("an insured's unreasonable belief in the need for self-defense does not turn the resulting purposeful and intentional act of assault and battery into "an accident" within the policy's coverage clause"); Merced Mut. Ins. Co., 213 Cal.App.3d at 50 ("All of the acts, the manner in which they were done, and the objective accomplished occurred exactly as appellant intended.).

   Defendant contends that the underlying claims in this action sound in contract, not tort, and therefore are not within the scope of the policy.  (Mot. 19.)  Plaintiffs rely on Vandenberg v. Superior Ct., 21 Cal.4th 815, 838 (1999), arguing it overruled a number of previous cases in finding that property damage losses are not necessarily precluded because they are pled as contract damages.  (Opp. 14.)   The Ninth Circuit has addressed Vandenberg's holding which considered

the policy phrase, "legally obligated to pay as damages."

In <u>Vandenberg</u>, the Supreme Court of California overruled <u>International Surplus Lines Ins. Co. v. Devonshire Coverage Corp.</u>, 93 Cal.App.3d 601, 155 Cal.Rptr. 870 (1979).... <u>Vandenberg</u>, 88 Cal.Rptr.2d 366, 982 P.2d at 246.

Oceanic further argues that because <u>Vandenberg</u> was the basis of our holding in <u>Anthem Elec., Inc. v. Pac. Employers Ins. Co.</u>, 302 F.3d 1049 (9th Cir.2002), Burlington owes a duty to defend. We disagree.

Oceanic reads too deeply into <u>Vandenberg</u>. <u>Vandenberg</u> involved damage to a parcel of land that the insured had leased under an agreement to operate an automobile sales and service facility. <u>Vandenberg</u>, 88 Cal.Rptr.2d 366, 982 P.2d at 234. When the property reverted back to the landowners after the business was discontinued, the owners discovered that the soil and groundwater underlying the property had been contaminated. <u>Id.</u> at 234–35. The owners filed suit alleging breach of contract and negligence. The insured tendered defense of that claim to its insurers under its CGL policies. <u>Id.</u> at 235. Those policies provided coverage to the insured for sums the insured was "legally obligated to pay as damages." The issue before the California Supreme Court was whether this policy language precluded coverage for losses pleaded as contractual damages. <u>Id.</u> at 243. The insurers argued that the phrase, "legally obligated to pay as damages," referred only to tort liability and not contractual liability, citing <u>International Surplus</u> and a line of cases holding that any liability arising *ex contractu* (from a contract) as opposed to *ex delicto* (from a tort), was not covered under a CGL policy. <u>Id.</u> at 244. The reasoning behind those cases was that the phrase was intended to describe liability based on a breach of a duty imposed by law, i.e., tort, rather than by contract. <u>Id.</u>

The California Supreme Court disagreed and "reject[ed] the *ex contractu/ex delicto* distinction," explaining that "the <u>International Surplus</u> rationale, distinguishing contract from tort liability for purposes of the CGL insurance coverage phrase 'legally obligated to pay as damages,' is incorrect." <u>Id.</u> at 244. It held that the insurers "cannot avoid coverage for damages awarded against [the insured] solely on the grounds the damages were assessed on a contractual theory." <u>Id.</u> at 246.

The basis for the California Supreme Court's holding, however, was not that a breach of contract could constitute an occurrence under a CGL policy. Instead, the court's focus was on the policy phrase, "legally obligated to pay as damages." *While the phrase was broad enough to include damages for breach of contract or tort, the court stressed that its interpretation of the phrase did not extend to "limitations imposed by other terms of the coverage agreement (e.g. bodily injury and property damage caused by an occurrence.)"* <u>Id.</u> at 246 (citation omitted) (emphasis added). The court's rationale was that:

> the arbitrariness of the distinction between contract and tort in the <u>International Surplus</u> line of cases is evident when we consider the same act may constitute both a breach of contract and a tort. Predicating coverage upon an injured party's choice of remedy or the form of action sought is not the law of this state.... Instead courts must focus on the nature of the risk and the injury, in light of policy provisions, to make that determination.

[<u>Vandenberg</u>, 21 Cal.4th at 841 (citations omitted)].

<u>Burlington Ins. Co. v. Oceanic Design & Const., Inc.</u>, 383 F.3d 940, 949–50 (9th Cir. 2004)

1 (emphasis added).  Vandenberg held that an insurer cannot avoid coverage for damages awarded

2 solely on the ground that the damages were assessed on a contractual theory.  21 Cal.4th at 841.

3      Similarly, Continental Casualty Co. v. Superior Court addressed Vandenberg's finding.

> Vandenberg said no more than whatever the interpretation to be given to the term "legally obligated," it must be broad enough to include "damages for breach of contract as well as for tort." (Vandenberg, supra, 21 Cal.4th at p. 841.) The court was only making the simple point that it was not the "form of the proceeding" (ibid.) that would control coverage, but rather that the issue would be resolved by a determination as to whether the acts of the insured had created a risk covered under the policy which resulted in either bodily injury or property damage to another.  If those requirements were satisfied, it would not matter that the third party claimant's theory of recovery was based on contract rather than on tort.

9 Continental Casualty Co. v. Superior Court, 92 Cal.App.4th 430, 447 (2001).

10      Conway v. Northfield Ins. Co., 399 F.Supp.3d 950, 962 (N.D. Cal. 2019), recognized "the

11 California Supreme Court has held that the term 'accident,' in the context of liability insurance, 'is

12 more comprehensive than the term 'negligence' and thus includes negligence.' " (Quoting Liberty

13 Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co., 5 Cal.5th 216, 221 (2018) and Safeco Ins. Co.

14 v. Robert S., 26 Cal.4th 758, 765 (2001)).  In Conway, the leasor of a restaurant intentionally hired

15 contractors, but the court found that she could have been negligent in her failure to instruct those

16 contractors which was the starting point of a series of events that led to the loss of use of the

17 restaurant's assets.  Conway, 399 F.Supp.3d at 962.

18      Liberty Surplus Ins. Corp., dealt with the question of whether there was occurrence under

19 an employer's commercial general liability policy where a third party sued the employer for

20 negligent hiring, retention, and supervision of an employee who intentionally injured the third

21 party.  5 Cal.5th at 220.  The underlying claim was for negligent hiring, retention, and supervision

22 of an employee who committed sexual misconduct.  The term accident under California law in the

23 coverage clause of an insurance policy refers to the conduct of the insured for which liability is

24 sought to be imposed.  Id. at 221.  The term accident is more comprehensive than the term

25 negligence and therefor includes negligence.  Id.  "[A] policy providing a defense and

26 indemnification for bodily injury caused by 'an accident' 'promise[s] coverage for liability

27 resulting from the insured's negligent acts.' "  Id., at 221-22 (quoting Safeco Ins. Co., 26 Cal.4th at

28 765).

"Causation is established for purposes of California tort law if the defendant's conduct is a 'substantial factor' in bringing about the plaintiff's injury."   Liberty Surplus Ins. Corp., 5 Cal.5th at 223.   Although the employee's acts were intentional and beyond the scope of the policy, California cases expressly recognize that negligent hiring, retention, or supervision may be a substantial factor in a sexual molestation perpetrated by an employee, depending on the facts presented.  Id., at 222-23.  To qualify as an accident, "the acts of the insured 'must be considered the starting point of the causal series of events, not the injured party's acts."  Id., at 224.  In Liberty Surplus Ins. Corp., the "occurrence resulting in injury" began with the negligent hiring and ended with the employee's act of molestation.  Id., at 225.

Plaintiff contends that in the underlying action, the complaint alleges that the swimming pool equipment was improperly maintained by Plaintiffs causing physical damage to the Buyer. (Opp. 12.)  In the underlying action, the Buyer alleges the swimming pool equipment was not in good working condition in view of defective and improperly maintained pump, filter, and heater system and Plaintiffs' own negligent maintenance.  (State Compl. at ¶¶ 12(f), 19, 32(h), 35(h).) The third cause of action alleges negligence as follows:

> 22. S&H realleges and incorporates by reference each allegation contained in paragraphs 1 through 15 and 17 through 21 above, as though the same were fully set forth at this point.
>
> 23. At the time Swanbom and Evans made the above-alleged Representations,[4] they

---

[4] Representations are the allegations in the state complaint at paragraph 11 as set forth below:

(a) In the Real Estate Transfer Disclosure Statement supplied to S&H during escrow (the "Disclosure Statement"), Swanbom expressly represented to S&H, in writing, that there were no "flooding, drainage or grading problems" at the Property.  A true and correct copy of the Disclosure Statement is attached hereto as Exhibit "B" and incorporated herein.
(b) In the Seller Property Questionnaire supplied to S&H during escrow (the "Questionnaire"), Swanbom effectively represented to S&H, in writing, that the ponding basin at the Property was sufficient to handle any accumulating rainwater at the Property. A true and correct copy of the Questionnaire is attached hereto as Exhibit "C" and incorporated herein.
(c) In the Disclosure Statement, Swanbom expressly represented to S&H that the Property well provided water supply, without indicating that there were any problems in the water supply, either in terms of sufficiency or contamination.
(d) In the Questionnaire, Swanbom represented that "permits are pending for the kitchen and guest house." When Connie Bowser asked Evans to provide clarification, Evans expressly represented that the required documentation attesting the completion and ability to lawfully use the kitchen, and documentation attesting the final inspection and approval of the guest house, would be issued prior to the close of escrow.
(e) Swanbom and Evans represented that the swimming pool equipment was in good working condition.

had no reasonable ground for believing the Representations to be true.

24. At the time Swanbom and Evans failed to disclose the true conditions at, and the true facts concerning, the Property, they had no reasonable ground for believing their disclosures to be true, complete, and not misleading.

(Id. p. 10.)  While Plaintiff argues that the underlying complaint alleges property damage and loss of use, the only allegation regarding negligence, other than the misrepresentation claims, is that the pool was not in good working condition due to Plaintiffs' negligent maintenance.

The policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period in "bodily injury"; or "property damage".   "Property damage" is defined as "physical injury to, destruction of, or loss of use of tangible property." (Maine Policy 18; Butler Policy 16.) The underlying complaint only alleges the swimming pool equipment was not in good working condition in view of defective and improperly maintained pump, filter, and heater system and Plaintiffs' own negligent maintenance.  (State Compl. at ¶¶ 12(f), 19, 32(h), 35(h).)  Even liberally construed this does not allege an "occurrence that results in "property damage" to the pool under the policy definition due to the negligence of Plaintiffs.  Plaintiffs rely on loss of use and property damage allegations elsewhere in the underlying complaint.  But there are no allegations in the underlying complaint that any of the other "incidents" were due to negligence, rather the allegations are that Plaintiffs failed to disclose the defects to the Buyer.

Although Plaintiff argues that the Buyer has alleged negligent maintenance and modification of the property that resulted in property damage and loss of use, the only factual allegation of negligence raised in Plaintiffs' complaint states,

Servants and Handmaids also alleged that Plaintiffs failed to properly maintain the property, which caused physical damage to the Property after the sale.  Also alleged was that the failure to maintain the property led to the destruction of the pool filter and resulting damages with an occurrence date of May 5, 2018.

(Compl., ¶ 19.)

---

(f) Swanbom and Evans represented that the irrigation systems and drainage at the Property were adequate. Among other things, in the Questionnaire, Swanbom and Evans represented that the irrigation system provided an "ultra-high efficiency irrigation for landscape."

(State Compl. at p. 30.)

1   While Plaintiffs complaint alleges that the Buyer alleged failure to maintain the property

2   led to the destruction of the pool filter and an occurrence date of May 5, 2018, there are no such

3   allegations in the underlying complaint.  As discussed above, the underlying complaint merely

4   states that the swimming pool equipment was not in good working order.  The insurer's duty to

5   defend arises where an insured "becomes aware of, or if a third party lawsuit pleads, facts that give

6   rise to potential liability under the insurance policy."  Frank & Freedus, 45 Cal.App.4th at 469;

7   Mirpad, LLC, 132 Cal.App.4th at 1068.   Plaintiffs' complaint contains no allegation by which the

8   Court can reasonably infer that Defendant was aware of any allegation in the underlying lawsuit

9   that there had been destruction of the pool pump and any resulting property damage.  Iqbal, 556

10   U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  Plaintiff has failed

11   to state a claim that Defendant was aware of any facts that would give rise to potential liability

12   under the policy.  The Court finds that Plaintiffs have failed to state a claim based on the duty to

13   defend and recommends that Defendant's motion to dismiss be granted.

14   **b.**      **Whether Plaintiffs' claims are precluded under California law**

15   Defendant argues that since all the claims against Plaintiffs in the underlying state action

16   arise out of the contract to sell the Maine Property, the insurance policies do not afford coverage

17   for the claims.  (Mot. 19.)  Plaintiffs counter that the underlying action is not solely a breach of

18   contract action and there are allegations of negligence that would be covered by the insurance

19   policies.  (Opp. 17.)  Further, Plaintiffs argue that there is no arising out of sale exclusion in the

20   Butler policy.  (Opp. 14.)

21   Defendant replies that the relationship between the Buyer and Plaintiffs arises out of the

22   contract for sale of the property and, prior to entry into the contract for sale, Plaintiffs did not owe

23   a duty to anyone regarding negligent maintenance or repair on the property.   (Reply 2-3.)

24   Defendant contends that under California law, duties that depend on the existence of a contract are

25   not covered by insurance.  (Reply 3.)  Defendant relies on McDermott v. Mercury Cas. Co., No.

26   B156166, 2002 WL 31820205, at *1 (Dec. 17, 2002), to argue that regardless of how Plaintiffs

27   attempt to characterize the negligent maintenance and repair claims, the harm could not have been

28   realized without the contract to sell the house and the insurance policies do not afford coverage for

1   such claims.[5]  (Reply 4.)  Finally, Defendant asserts that the nonexistence of an exclusion does not

2   create the possibility of coverage.  (Reply 4-5.)

3

4

5   [5] Defendant relies on McDermott, an unpublished case from the California Court of Appeals  In McDermott, the insured sold a home and, after the close of escrow, the buyers discovered extensive dry rot and termite damage and building code violations.  The buyer sued bringing various causes of action and the insurer refused to defend.  After

6   the action was settled, an action was brought for breach of contract and breach of the covenant of good faith and fair dealing alleging that the insurer had wrongfully refused to defend the underlying action.  The trial court granted

7   summary judgment in favor of the insurer on the ground that the allegations in the underlying action did not involve an "occurrence" within policy coverage and thus the insurer had no duty to defend the underlying action.  The plaintiff

8   appealed.  McDermott, 2002 WL 31820205, at *1.
          The underlying complaint alleged a breach of duty to disclose material information regarding the property;

9   the defects in the property were caused by negligent design, construction, and maintenance by the seller; the seller owed a duty to the buyer to perform their design, development, construction and sale of the property in a timely,

10  workmanlike manner and negligently failed to use due care; negligently misrepresented that the property was structurally sound and free of defects; intentionally misrepresented that the property was structurally sound and free of

11  defects; the seller occupied a confidential relationship with the buyer and breached a fiduciary duty by failing to disclose material facts; breach of an express warranty that the home was in move-in condition; knowledge of a

12  dangerous condition of the property that created a reasonably foreseeable risk of the kind of injuries that had in fact occurred; the seller owned, occupied, used, repaired, controlled, inspected, and maintained the property in such a

13  manner as to constitute a nuisance to the homeowners; and conspiracy to conceal from the buyer the termite and dry rot damage and building code violations McDermott, 2002 WL 31820205, at *2.
          The insurer relied on  Miller v. Western General Agency, Inc., 41 Cal.App.4th 1144 (1996), to argue that

14  there was no occurrence under the policy because the insured was sued for failing to disclose and not for the defects in the property therefore the nondisclosure was neither an "occurrence" within the policy, nor was the economic loss to the

15  buyer "property damage" within the policy.  McDermott, 2002 WL 31820205, at *3.  The plaintiff tried to distinguish Miller by arguing that Miller was solely an action based on misrepresentation while they were bringing

16  additional causes of action based on the seller's inadequate maintenance, design, construction, or repair of the property.  Id.  The insurer countered that the attempt to distinguish Miller lacked merit because while the seller owned

17  the property, she was free to build, design, maintain, or fail to maintain and repair the property in whatever manner she chose.  The cause of action in the underlying complaint was created by the seller's failure to disclose the defects and

18  negligent maintenance.  Id.  It was only because of the seller concealed the termites, dry rot, and negligent maintenance that the buyer had an actionable claim against her.  The insurer argued that under Miller neither property

19  damage nor an occurrence gives rise to the duty to defend and if the seller had disclosed the termites, dry rot, and negligent maintenance at the time of the sale there would be no cause of action against her.  Id.

20        The trial court agreed with the insurer and found the case stemmed from the failure to disclose and that the underlying complaint allegations did not give rise to an award of potentially covered damages because the allegations

21  were not based on an occurrence.  Therefore, the insurer did not owe a duty to defend.  McDermott, 2002 WL 31820205, at *3.

22        On appeal the plaintiffs argued that the action was distinguishable from Miller because they did not merely allege fraud, but also alleged the seller negligently designed or built the property or negligently failed to repair it

23  properly.  They contended that the additional causes of action were based on an occurrence and physical damage to tangible property and therefore fell within the policy coverage.  McDermott, 2002 WL 31820205, at *4.  The court of

24  appeals rejected the argument for the reasons asserted by the insurer and the trial court.  The court found that although the causes of action were couched in terms sounding in negligence, the cause of action depended on the purchase

25  transaction and the alleged fraud.  The additional causes of action did not change the substance of the underlying complaint, which was for damages due to fraud which is controlled by the Miller rule.  Id., at *4.

26        The court found it is the substance, not the form, of the underlying complaint that should be considered.  McDermott, 2002 WL 31820205, at *4.  The court went on to consider Continental Casualty Co. v. Superior Court, 92

27  Cal.App.4th 430 (2001), in which a partner of a developer sued the developer for accounting of losses from construction defects claims asserted by a buyer of the project's homes.  The appellate court held that the developer's

28  insurer had no duty to defend because in substance the lawsuit was not for damage to property from construction defects but was for an allocation of economic losses between the partners.  McDermott, 2002 WL 31820205, at *4.

1          i.       Negligence Claim

2       The parties dispute whether the substance of the underlying complaint is for failure to

3 disclose or contains a negligence cause of action that would be an occurrence under the policy.

4       In Continental Casualty Co., a partner in a joint venture for development and construction

5 projects brought a claim against the insurance company for failure to defend.  The underlying suit

6 had been brought to resolve economic disputes that existed and one of the matters was the proper

7 allocation of losses arising from construction defect claims.   Continental Casualty Co., 92

8 Cal.App.4th at 433.  Both parties to the underlying suit tendered the defense to the insurance

9 company under a commercial general liability policy that agreed to defend against all construction

10 defect claims.  Id. at 435.  The insurer refused to defend and argued that the action was not seeking

11 to recover from property damage but was suing to dissolve the multiple businesses and partner

12 relationships.  Id.  The trial court found that there was no question that the construction defects

13 were "property damage" within the meaning of the policy and the insurer had defended the

14 construction defect actions brought by the homeowners.   Id. at 437.   The suit itself was a

15 partnership action, but the fourth cause of action sought a declaration of liability for the costs of

16 any construction defects for which the partnership would become liable.  Id.  The trial court found

17 that the fact that the specific relief sought was declaratory did not vitiate coverage and the

18 insurance company had a duty to defend.  Id.

19       On appeal, the insurer argued that there was no coverage under the policy for claims

20 asserted by one partner against the other arising from a dispute as to respective liability for actual

21 or potential partnership losses or debts.  Continental Casualty Co., 92 Cal.App.4th at 437.  The

22 insured argued that since the insurer argued the disputed liabilities all arise from the construction

23 defect claims, the insurer had conceded that the claims were covered under the policy.  Id.  The

24 insured argued that, given the principles given the principles articulated in Vandenburg, the fact

25 that the claim of liability is based on contract cannot preclude entitlement to coverage.  Id. at 438.

26       "It is settled that property damage coverage under a liability policy . . . extends only to

27 physical injury to, or destruction or loss of use of, tangible property.  'Damage for lost profits, loss

28 of investment or other harm to one's economic interest constitute injuries to intangible property

which by definition fall outside the scope of the policy.' "  <u>Continental Casualty Co.</u>, 92 Cal.App.4th at 439.  The complaint did not allege property damage but sought a declaration of liability for certain obligations incurred by the partnership, the construction defect claims.  <u>Id.</u>at 439-40.  The appellate court considered prior case law, finding

> in evaluating whether or not an insurance company has a duty to defend a particular lawsuit, California courts have consistently analyzed the nature of the transactions between the parties to the lawsuit.  In this regard, when the fundamental nature of those transactions is economic, California courts have refused to find a duty to defend the lawsuit even though the litigation will encompass issues relating to property damage.

<u>Continental Casualty Co.</u>, 92 Cal.App.4th at 443.  The court found that the action arose, not from an accident causing damage to the property, but from the several financial and partnership transactions.  The complaint was seeking economic relief, not claiming property damage.  <u>Id.</u>, at 444.  It was not that the claim was based on contract that precluded coverage, but rather the failure of the complaint to seek damages for property damage caused by an occurrence.  <u>Id.</u>, at 447.

In <u>Miller v. Western General Agency, Inc.</u>, 41 Cal.App.4th 1144 (1996), the plaintiffs brought a claim against the insurance company claiming the insurer wrongfully refused to defend under their homeowner's policy when they were sued for misrepresentation and concealment allegedly committed during the sale of their home.  <u>Miller</u>, 41 Cal.App.4th at 1147.  After the plaintiffs sold their home, they were sued by the buyers for intentional infliction of emotional distress; fraud, deceit and suppression of facts; and negligent misrepresentation.  <u>Id.</u>  The buyers alleged that the plumbing in the house was defective at the time escrow closed and the seller should have known prior to the sale, and they never disclosed the information, in fact they intentionally suppressed and concealed the true condition of the plumbing to induce the buyer to complete the purchase.  The sellers submitted the claim to their insurance company who refused to defend stating there was no coverage under the policy.  <u>Id.</u>, at 1148.  The seller then filed an action for breach of contract, bad faith and fraud.  <u>Id.</u>, at 1149.  The court held on summary judgment that the basis of the complaint was not the alleged defective plumbing, although it might be part of their damages, but it was the tortious fraudulent conduct of the sellers which did not fall within the policy coverage.  <u>Id.</u>, at 1151.  The buyer was suing, not for property damage, but for the economic

25

loss and emotional distress that resulted from the misrepresentation.  The loss of fair market value of the home is not a loss to tangible property under an insurance policy.  It has been repeatedly held that damages for fraud are limited to recovery of economic damages which are not injuries to tangible property within the scope of coverage of a liability policy.  Id.

In Safeco Ins. Co. of Am. v. Andrews, 915 F.2d 500 (9th Cir. 1990), a complaint was brought "alleging negligent failure to inspect the property and inform Kuehl of certain alleged defects in the Glen Green property, misrepresentation, breach of contract, and rescission of contract." Safeco Ins. Co. of Am., 915 F.2d at 501.  On appeal from a summary judgment order, the Ninth Circuit considered that the plaintiff was seeking damages for the alleged negligence in failing to inspect and inform him of defects in the property with the misrepresentation materially effecting the value of the property.  However, the claims did not expose the seller to liability based on the damage to the property, "but rather for economic loss resulting from Andrews's alleged failure to discover and disclose facts relevant to the property's value and desirability.  Such harm is outside the scope of the policy." Id., at 502.  The court stated that while the defective condition of the property is an element of the claims, "the defects cannot, even when interpreting the policy broadly, be considered the cause of" the damages.  Id.  The cause of the damage was the seller's alleged misrepresentations, which are not an "occurrence" under the terms of the policy.  Id.

At the May 22, 2024, hearing, the Court inquired of the parties as to the substance of the underlying state complaint.  Plaintiff asserted that the complaint alleges failure to disclose but also alleges a negligence cause of action and is therefore distinguishable from those cases which find that a failure to disclose, whether intentional or negligent, is not an occurrence under an insurance policy.  However, in reviewing the underlying complaint, the negligence cause of action is based upon the "Representations" of Plaintiffs and therefore is alleging negligent disclosure, not a general negligence claim as Plaintiff contends.  As held by the cases cited above, and the parties have agreed, the failure to disclose or misrepresentations, whether intentional or negligent is not an "occurrence" under the policy.  (See Mot. 16-7; Opp. 21.)

In the state complaint, the Buyer alleges they "incurred damages in that, among other things, the price paid for the Property was substantially greater than the actual value of the

1   Property with the undisclosed defects; S&H was compelled to expend substantial amounts to

2   attempt to mitigate the effect of the undisclosed defects at the Property; S&H lost the use and

3   enjoyment of the Property; and S&H lost substantial income because the undisclosed defects at the

4   Property prevented the operation of the School."  (State Compl. at ¶ 15.)  This action is similar to

5   the above actions holding that, although the causes of action were couched in terms sounding in

6   negligence, the cause of action depended on the purchase transaction and the alleged fraud.  The

7   additional causes of action did not change the substance of the underlying complaint, which was

8   for damages due to fraud which is controlled by the Miller rule.

9         Here, the fundamental nature of the transactions is economic, and California courts have

10  refused to find a duty to defend the lawsuit even though the litigation will encompass issues

11  relating to property damage.  Continental Casualty Co., 92 Cal.App.4th at 443.  As in Miller, the

12  Buyer is not suing for property damage, but is suing for the economic losses due to the

13  misrepresentations of Plaintiffs which is not a tangible property loss under an insurance policy.

14  Miller, 41 Cal.App.4th at 1151.  While Plaintiffs argue that the defects in the property are the

15  cause of the damage to the Buyer, although the defects in the property are an element of the

16  Buyer's claims, it is clear from review of the underlying complaint that the failure to disclose and

17  alleged misrepresentations are the cause of the Buyer's damages and under California law this is

18  not an "occurrence" under an insurance policy.  Safeco Ins. Co. of Am., 915 F.2d at 502.  The

19  Court finds that the substance of the underlying complaint is that Plaintiffs here failed to disclose

20  the defects in the property and the Buyer is seeking economic damages.  The underlying complaint

21  does not allege an occurrence under an insurance policy.

22        ii.    Negligence under California Civil Code, section 1102

23        Plaintiffs argue that the underlying action brings a claim for violation of California Civil

24  Code, section 1102 alleging that Plaintiffs negligently failed to seek information that should have

25  been disclosed to the Buyer.  (Opp. 16-17.)  Defendant responds that under California law duties

26  that are imposed by the existence of a contract are not covered under a liability policy.   As

27  discussed above, it is the substance, not the form, of the underlying complaint that should be

28  considered in determining if the allegations in the underlying action fall within the coverage of the

policies. "[N]egligent misrepresentations causing investment loss or loss of other economic interest are considered purposeful rather than accidental for the purpose of insurance coverage.... The underlying rationale of this rule is that negligent misrepresentation requires intent to induce reliance and, therefore, is a subspecies or variety of fraud which is excluded from policy coverage." <u>Miller</u>, 41 Cal.App.4th at 1150.

The fifth cause of action in the underlying state complaint alleges that Plaintiffs had a duty under California Civil Code, section 1102, et seq. to inspect and fully and fairly disclose all facts that materially affect or relate to a condition of the property and to disclose truthful and complete, rather than misleading information.  (State Compl. 12.)  The complaint alleges that Plaintiffs breached this duty by failing to determine that the property was subject to serious flooding during the rainy season that would render the property unusable for extended periods of time; the ponding basin was completely insufficient to handle the accumulating rainwater such that the property flooded for extended periods of time; the well did not provide an adequate supply of water and the water supply was unsafe due to excessive nitrate contamination; the Piranha modification to one of the septic systems had a faulty electrical system and another septic system at the property had not been inspected; the approval process for the kitchen and guest house remodels had scarcely been initiated and the final approval would not occur until well into the future and would require substantial effort and expense on the part of the buyer; the property had inefficient, faulty, damaged and broken down irrigation systems and drainage; the pool equipment was not in good operating condition due to defective and improperly maintained pump, filter, and heater system and Plaintiffs' own negligent maintenance thereof; Plaintiffs failed to supply the required material information as to the condition of the property and instead supplied information that did not satisfy Civil Code §1102, et seq., and Plaintiffs' actions were not in good faith.  (<u>Id.</u>, 12-13.)

Here, the underlying complaint, to the extent that it is alleging negligent misrepresentation of the true condition of the property, is excluded from policy coverage as a matter of law.  <u>Miller</u>, 41 Cal.App.4th at 1150.

///

///

28

**E.      Whether there was a Breach of the Duty of Good Faith and Fair Dealing**

Under California law, "[e]very contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement." Richards v. Centripetal Networks, Inc., ___ F.Supp.3d ___, No. 4:23-CV-00145-HSG, 2024 WL 24327, at *4 (N.D. Cal. Jan. 2, 2024) (quoting Carson v. Mercury Ins. Co., 210 Cal.App.4th 409, 429 (2012) (quotation omitted).  "[A] contractual obligation is the underpinning of a bad faith claim, [and] such claim cannot be maintained unless policy benefits are due under the contract." Granite Outlet, Inc., 190 F.Supp.3d at 987; Love v. Fire Ins. Exchange, 221 Cal.App.3d 1136, 1153 (1990). "California law is clear, that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing." Manzarek, 519 F.3d at 1034 (citing Waller, 11 Cal.4th 1, 900 P.2d at 638–39).

Here, the Court finds that based on the allegations in the underlying complaint, Defendant had no duty to defend or indemnify the underlying complaint brought by the Buyer due to Plaintiffs' misrepresentations as to the conditions of the property and therefore Defendant's declination of coverage and defense was reasonable and not in bad faith.  Accordingly, since there was no breach of contract, there was no breach of the duty of good faith and fair dealing.

**F.      Whether Leave to Amend Should be Granted**

Plaintiffs request that, if Defendant's motion to dismiss be granted, they be given leave to file an amended complaint.  "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Manzarek, 519 F.3d at 1034 (quoting Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1296 (9th Cir.1998)).  A court has the discretion to deny leave to amend if there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc." Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty., 708 F.3d 1109, 1117 (9th Cir. 2013) (citation omitted); accord Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004); Madeja v. Olympic Packers, LLC., 310 F.3d 628, 636 (9th Cir. 2002); Washington State Republican Party v. Washington State Grange, 676 F.3d 784, 797 (9th Cir. 2012).  "The court

should 'examine each case on its facts' and determine the propriety of granting leave to amend on that basis." Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U., 980 F.Supp.2d 1160, 1175 (E.D. Cal. 2013) (quoting SAES Getters S.p.A. v. Aeronex, Inc., 219 F.Supp.2d 1081, 1086 (S.D. Cal. 2002) and 6 Charles Alan Wright, et al., Federal Practice and Procedure Civil 2d § 1430 (2d ed. 1990)). The factors are not given equal weight and futility alone is sufficient to justify the denial of a motion to amend. Washington v. Lowe's HIW Inc., 75 F.Supp.3d 1240, 1245 (N.D. Cal. 2014), appeal dismissed (Feb. 25, 2015).

Here, while it appears that granting leave to amend may be futile, Plaintiffs contend that there were additional allegations of negligence that were raised during discovery. Accordingly, the Court recommends that Plaintiffs be granted one final opportunity to file an amended complaint to attempt to state a claim in this action.

## IV.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the underlying complaint filed in the state court action does not allege claims that that create a possibility of coverage under the insurance policies. However, Plaintiffs have asserted that during discovery additional allegations of negligence on the part of Plaintiffs were raised and therefore, Plaintiffs should be granted one final opportunity to file an amended complaint.

According, IT IS HEREBY RECOMMENDED that Defendant Travelers Commercial Insurance Company's motion to dismiss for failure to state a claim, filed April 3, 2024, be GRANTED WITH LEAVE TO AMEND.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified

1 | time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th

2 | Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

3

4 | IT IS SO ORDERED.

5 | Dated:   **June 5, 2024**

UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28